[Civ. No. 37399. First Dist., Div. Four. May 19, 1976.]

CARMEL VALLEY VIEW, LTD., Plaintiff and Respondent, v. BOARD OF SUPERVISORS OF MONTEREY COUNTY et al., Defendants and Appellants.

### COUNSEL

William H. Stoffers, County Counsel, and Henry I. Jorgensen, Deputy County Counsel, for Defendants and Appellants.

Myers, Hawley, Morely & Moore and John M. Moore for Plaintiff and Respondent.

### OPINION

**CHRISTIAN, J.**—Respondent Carmel Valley View, a limited partnership, obtained from the superior court a writ of mandate directing the

planning commission and the Board of Supervisors of the County of Monterey (appellants) to approve a tentative subdivision map. The present appeal followed.

Respondent sought approval of a tentative subdivision map for a development called "Villas Carmel del Pacifico." The Monterey County Planning Commission denied approval, upon findings that the proposed subdivision was "premature" and that "the site is not physically suitable for the type of development with respect to the use of the individual sewage disposal systems, . . ." Respondent appealed to the Monterey County Board of Supervisors. Following a public hearing, the board denied the appeal.

Appellants contend that disapproval of respondent's tentative subdivision map was supported by substantial evidence that the site is not physically suitable for the type of development proposed due to the fact that respondent plans to use individual sewage disposal systems. "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c); *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29].) ■ The trial court exercised a substantial evidence review; where the trial court does not exercise its independent judgment in reviewing an administrative decision, the trial court is exercising an essentially appellate function, and the trial court and appellate courts occupy identical positions with regard to the administrative record and the determination of whether the administrative decision is supported by substantial evidence. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915-916 [80 Cal.Rptr. 89, 458 P.2d 33].)

At the public hearing before the board of supervisors, respondent presented evidence that the planned septic tanks would be a safe means of sewage disposal. But there was evidence to the contrary. The planning commission and the board of supervisors had before them an environmental impact report (EIR) and the testimony of Walter Wong, a Monterey County Health Department official. The EIR related that the proposed development is a 305-unit, 1-family residential development

of 497.3 acres in the Carmel Valley. The project and its anticipated impact were generally discussed. The environmental impact report also contained information relating to the proposed use of individual septic tanks for each unit of the development. The underlying structure of the area is shale, with a thin soil cover generally less than three feet in depth. Although the bedding planes of the land slope away from the Carmel River, and "will virtually preclude any seepage [of waste effluent] into the groundwater aquifers of the Valley," all drainage from the site is ultimately into the Carmel River. Much of the property is on a steep slope, and the thinness of the overlying soil layer, and limited permeability of the underlying shale, will result in insufficient filtration of the wastes and limited soil bacteria action upon the wastes, resulting in a substantial threat of direct infiltration of underground water by untreated effluents. These concerns over the ability of the proposed septic tanks to filter waste effluents on the proposed site were also expressed by the Water Resources Control Board of the State Resources Agency, the United States Department of Agriculture, and the Environmental Health Services of the State Department of Health.

Wong testified that the shale substructure does not act as a filter, and that the soil on top of the shale was too thin to provide reliable filtration. While other residential developments in the flat, lower areas of the valley were safe for septic tank waste disposal, in mountainous areas contamination of water supplies might result. Wong was also concerned that contaminated effluent from the development might enter existing seismic faults and be conveyed into ground water supplies. He noted that there had been an increase in the concentration of nitrates in a number of monitored wells in the valley during the last several years. After receiving this evidence the board of supervisors denied approval of the tentative subdivision map.

A governing body of a county is required to deny approval of a tentative subdivision map if it finds that the "site is not physically suitable for the type of development." (Gov. Code, § 66474, subd. (c) [formerly Bus. & Prof. Code, § 11549.5, subd. (c), repealed by Stats. 1974, ch. 1536, § 1, operative Mar. 1, 1975].) Appellants assert that the EIR and the testimony of Wong constituted substantial evidence to support rejection of the tentative subdivision map; respondents rejoin that the superior court acted correctly in determining that neither the EIR nor Wong's testimony was substantial evidence. ▮ "An environmental impact report is an informational document which, when its preparation is required by this division, shall be considered by every public agency

prior to its approval or disapproval of a project. The purpose of an environmental impact report is to provide public agencies with detailed information about the effect which a proposed project is likely to have on the environment; . . ." (Pub. Resources Code, § 21061; Cal. Admin. Code, tit. 14, §§ 15064, 15085, subd. (j).) An EIR is required when a project with significant environmental impact is to be carried out by a nongovernmental person subject to approval of a public agency. (Pub. Resources Code, § 21151; Cal. Admin. Code, tit. 14, § 15061, subd. (b).) Although an EIR is referred to as an "informational document," it also has a significant evidentiary use. (See *Burger* v. *County of Mendocino* (1975) 45 Cal.App.3d 322, 327 [119 Cal.Rptr. 568].) ■ The EIR here, in presenting material bearing on the physical suitability of the site for a residential development which would not be served by a sewage disposal system, was appropriately to be considered by the planning commission and the board of supervisors. The EIR contained substantial evidence upon which appellants could properly base their decision rejecting the tentative subdivision map.

■ Respondent cites *County of Inyo* v. *Yorty* (1973) 32 Cal.App.3d 795 [108 Cal.Rptr. 377], to support its assertion that an EIR is not an evidentiary document, and therefore cannot constitute substantial evidence. *County of Inyo* v. *Yorty* notes, in dictum, that the guidelines promulgated by the Secretary of the California Resources Agency on February 3, 1973, state: "The EIR process is intended to enable public agencies to evaluate a project to determine whether it may have a significant effect on the environment, examine and institute methods of reducing adverse impacts, and consider alternatives to the project as proposed. . . . An EIR may not be used as an instrument to rationalize approval of a project, nor do indications of adverse impact, as enunciated in an EIR, require that a project be disapproved—public agencies retain existing authority to balance environmental objectives with economic and social objectives." (32 Cal.App.3d at p. 809.) While an EIR does not require a public agency to act in any particular manner, it constitutes evidence which must be considered by the public agency along with other evidence which may be presented to the agency. *County of Inyo* v. *Yorty* does not hold that an EIR may not be substantial evidence.

■ Wong's testimony was also substantial evidence which supported appellants' rejection of the tentative subdivision map. ■ An expert must generally give the reasons for his opinion, and his opinion does not constitute substantial evidence unless it has an adequate factual

basis. (*San Diego Gas & Elec. Co.* v. *Sinclair* (1963) 214 Cal.App.2d 778, 783 [29 Cal.Rptr. 769].) But a presentation to an administrative agency may properly include evidence that would not be admissible in a court of law. (*Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 608-609 [12 Cal.Rptr. 182]; also see *Iscoff* v. *Police Commission* (1963) 222 Cal.App.2d 395, 410 [35 Cal.Rptr. 189].) ▮ Wong testified that the use of septic tanks for sewage disposal in the proposed development could result in contamination of the water supply, and he related that hazard to the composition of the soil and its substructure and the steep slope of the property. He also made use of studies made by other public agencies to the same effect. Although Wong's testimony was given in a narrative and opinion form, it was substantial evidence supporting rejection of the tentative map.

▮ Denial of the approval of the tentative subdivision map is required where the governing body of a county makes any one of certain specific findings. (Gov. Code, § 66474 [formerly Bus. & Prof. Code, § 11549.5].) The findings must be sufficient to expose for review the administrative agency's basis for its action. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 513-514, fn. 16 at p. 517 [113 Cal.Rptr. 836, 522 P.2d 12]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 270 [104 Cal.Rptr. 761, 502 P.2d 1049].) ▮ The board of supervisors made no written findings, but the planning commission, which had initiated the rejection of the tentative subdivision map, had found that the site was not physically suitable for use of individual sewage disposal systems. The action of the board of supervisors in effect adopted the findings of the planning commission with respect to the physical unsuitability of the site for the planned development. Respondent was fully apprised of the reason for the action of the board of supervisors and no additional written findings were necessary.

The judgment is reversed with directions to render judgment for appellants.

Caldecott, P. J., and Rattigan, J., concurred.