[L.A. No. 30959. July 9, 1979.]

MERLIN W. HORN, Plaintiff and Appellant, v.
COUNTY OF VENTURA, Defendant and Respondent;
FREDERICK W. OSBORNE, Real Party in Interest and Respondent.

**COUNSEL**

James R. Leavy for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and E. Robert Wright, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Dorothy L. Schechter, County Counsel, and R. Thomas Harris, Assistant County Counsel, for Defendant and Respondent.

Marshall Lowthorp, Richards & Hibbs and Charles J. Conway, Jr., for Real Party in Interest and Respondent.

OPINION

RICHARDSON, J.—In this mandamus action, we consider whether approval by defendant county of a tentative subdivision map is an "adjudicatory" function which, under principles of due process, requires that both appropriate notice and an opportunity to be heard be given to persons whose property interests may be significantly affected. We will hold that such approval is "adjudicatory," and that rights to prior notice and hearing are accordingly invoked. We will further conclude that the county's general procedures for public notice of environmental decisions were constitutionally inadequate to apprise concerned landowners of governmental actions affecting their property interests. We also reject a contention that plaintiff lacks standing to assert these issues because he purchased the subject property after planning department approval of the map, and will reverse the trial court judgment dismissing the petition for writ of mandate.

The petition reflects the following chronology: On August 14, 1975, real party in interest Osborne applied to the planning department of defendant County of Ventura for its approval of a proposed division of his property into four lots. (Because only four parcels were involved, the project was directly subject only to the county's subdivision ordinance, and not to the Subdivision Map Act. (See former Bus. & Prof. Code, § 11500 et seq., now Gov. Code, § 66410 et seq.)) The planning department subsequently caused to be prepared a "negative declaration" under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21064), which declaration recited that the proposed subdivision would not have a significant effect on the environment. Thereafter, the department approved a tentative map upon the condition that Osborne install sewers for the lots. No notice was given to adjoining property owners prior to this action.

On December 3, 1975, subsequent to departmental approval of the tentative map, but before final approval by the board of supervisors (board), plaintiff purchased a parcel of land adjacent to the proposed subdivision. Meanwhile, Osborne had appealed to the board because of the imposition of the sewer condition, and a hearing thereon was set for December 9, 1975. Plaintiff, having learned by chance of the departmental approval, appeared at the hearing, advised the board that no notice and opportunity for hearing had yet been given to affected property owners, and asked that the board refer the proposal back to the planning agency for a noticed public hearing and further study of the project's

environmental effects. The board refused to consider any issue other than that relating to the sewers. The appeal was continued until December 23, when plaintiff again requested that the board grant a public hearing on the original subdivision proposal. This request was denied and the subdivision was approved by the board with a modified condition as to the sewers.

The petition alleges that certain of Osborne's lots are topographically unsuited for residential construction, that the design of the subdivision will hinder access to plaintiff's property thereby creating substantial traffic and parking congestion, and that the county's environmental assessment of the project is inadequate. Urging that the county exceeded its jurisdiction by approving the subdivision without affording constitutionally adequate notice and hearing procedures to affected landowners, the petition prays for a judgment setting aside defendant's approval.

Defendant and real party demurred generally. They argued that the petition failed to allege an exhaustion of administrative remedies, that subdivision approvals are "legislative" rather than "adjudicatory" in nature not requiring any notice and hearing for affected property owners, and that the defendant's procedures for public review of environmental decisions provided all constitutionally necessary protections. The general demurrers were sustained without leave to amend and this appeal followed.

■ Defendant renews before us its threshold argument that plaintiff could have raised all of his objections to the proposed subdivision through the county's environmental review process, and that his failure to do so is fatal to his claim. The argument ignores the essence of plaintiff's complaint, which is that these very procedures were constitutionally inadequate. One need not exhaust inadequate remedies in order to challenge their sufficiency. (E.g., *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 342-343 [124 Cal.Rptr. 513, 540 P.2d 609]; *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297]; *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, 566 [55 Cal.Rptr. 505, 421 P.2d 697]; *Roth* v. *City of Los Angeles* (1975) 53 Cal.App.3d 679, 688 [126 Cal.Rptr. 163].)

■ Moreover, plaintiff *did* exhaust the only available administrative means to invoke his asserted right to full notice and hearing. He twice appeared before the county's governing body, the final arbiter of subdivision proposals, reciting the lack of adequate notice to affected

property owners and requesting further study of the proposed subdivision by the planning commission after notice and hearing had been provided. These entreaties were rejected.

Under these circumstances, plaintiff is not barred because of a failure to pursue administrative remedies. Accordingly, we consider whether a notice and hearing are required, and, if so, whether the procedures available in the case before us meet such requirements.

1. *A Notice and Opportunity for Hearing Are Constitutionally Compelled*

Plaintiff's principal argument is that because the approval of subdivisions constitutes "quasi-adjudicatory" acts of local government those persons affected by such land use decisions are therefore constitutionally entitled to notice and an opportunity to be heard prior to the rendition of final decisions. In response, both defendant and real party characterize the actions as "quasi-legislative," prescribing no prior notice and hearing. As will appear, we agree with plaintiff.

Due process principles require reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest. (E.g., *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.* (1975) 419 U.S. 601, 605-606 [42 L.Ed.2d 751, 756, 95 S.Ct. 719]; *Goss* v. *Lopez* (1975) 419 U.S. 565, 572-576 [42 L.Ed.2d 725, 733-736, 95 S.Ct. 729]; *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 576-577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701]; *Boddie* v. *Connecticut* (1971) 401 U.S. 371, 379 [28 L.Ed.2d 113, 119-120, 91 S.Ct. 780]; *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337, 339 [23 L.Ed.2d 349, 352, 89 S.Ct. 1820]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206-207 [124 Cal.Rptr. 14, 539 P.2d 774]; *Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 541 [96 Cal.Rptr. 709, 488 P.2d 13].)

It is equally well settled, however, that only those governmental decisions which are *adjudicative* in nature are subject to procedural due process principles. *Legislative* action is not burdened by such requirements. (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652]; *Franchise Tax Board* v. *Superior Court* (1950) 36 Cal.2d 538, 549 [225 P.2d 905]; e.g., *Beck* v. *City Council of Beverly Hills* (1973) 30 Cal.App.3d 112, 115 [106 Cal.Rptr. 163]; *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268

Cal.App.2d 692, 708-709 [74 Cal.Rptr. 313].) The rationale of the "legislative-adjudicatory" distinction was well expressed many years ago by Justice Holmes in *Bi-Metallic Co.* v. *Colorado* (1915) 239 U.S. 441 [60 L.Ed. 372, 36 S.Ct. 141]: "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." (P. 445 [60 L.Ed. p. 375].)

We adopted similar reasoning recently in *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973], in which we concluded that the enactment of a general zoning ordinance by a city's voters under the initiative process, being "legislative" in character, required no prior notice and hearing, even though it might well be anticipated that the ordinance would deprive persons of significant property interests. (P. 211.) In so holding, we distinguished "adjudicatory" matters in which "the government's action affecting an individual [is] determined by facts peculiar to the individual case" from "legislative" decisions which involve the adoption of a "broad, generally applicable rule of conduct on the basis of general public policy." (Pp. 212-213; see also *United States* v. *Florida East Coast R. Co.* (1973) 410 U.S. 224, 245 [35 L.Ed.2d 223, 239, 93 S.Ct. 810]; *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 840-841 [130 Cal.Rptr. 169].)

We expressly cautioned in *San Diego* that land use planning decisions less extensive than general rezoning could not be insulated from notice and hearing requirements by application of the "legislative act" doctrine. We noted: "We are thus not faced in the instant case with any of the great number of more limited 'administrative' zoning decisions, such as the grant of a variance or the award of a conditional use permit, which are adjudicatory in nature and which thus involve entirely different constitutional considerations." (13 Cal.3d at p. 212 and fn. 5; see, e.g., *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834 [323 P.2d 71]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 74 [187 P.2d 686]; *Tandy* v. *City of Oakland* (1962) 208 Cal.App.2d 609, 611 [25 Cal.Rptr. 429]; see also

*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12].)

Subdivision approvals, like variances and conditional use permits, involve the application of general standards to specific parcels of real property. Such governmental conduct, affecting the relatively few, is "determined by facts peculiar to the individual case" and is "adjudicatory" in nature. Following our analysis of the constitutional implications of the variance procedure in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d 506, 513-514, several recent appellate decisions have assumed that subdivision approvals are "adjudicatory" or "quasi-judicial" local agency decisions which require adequate findings at the administrative level for purposes of judicial review under the "substantial evidence" standard. (*McMillan* v. *American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 182 [131 Cal.Rptr. 462]; *Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 823 [130 Cal.Rptr. 249].) In *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644 [150 Cal.Rptr. 242, 586 P.2d 556], we ourselves have very recently affirmed these principles, expressly holding that "*Approval of a tentative subdivision map is a quasi-judicial act* subject to judicial review for abuse of discretion under Code of Civil Procedure section 1094.5." (P. 651, fn. 2, italics added; see also *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825, 837-838 [118 Cal.Rptr. 856].)

*County of San Mateo* v. *Palomar Holding Co.* (1962) 208 Cal.App.2d 194 [24 Cal.Rptr. 905], is cited as establishing the "California rule" that subdivision approvals are "legislative" in nature, requiring no prior notice or hearing. (See Cal. Administrative Agency Practice (Cont.Ed.Bar 1970) Preliminary Considerations, § 1.19, p. 16.) The *Palomar* conclusion was founded on the observation that local agencies have no discretion to reject tentative maps which comport with the Subdivision Map Act and conforming ordinances (208 Cal.App.2d at pp. 198-199), and upon the fact that the board of supervisors, a "legislative" body, was the final arbiter of such decisions, rather than the planning commission before which hearing was sought. (*Id.,* at pp. 199-200.)

Neither premise withstands close scrutiny. The test for "legislative" and "adjudicatory" acts described by us in *San Diego* does not exclude from the latter category decisions of local governing bodies. Subdivisions are subject to environmental evaluation under CEQA (Pub. Resources Code, § 21080.) Moreover, the Subdivision Map Act, as in effect both during October-December 1975 and at present, mandates rejection of a

subdivision plan if it is deemed unsuitable in terms of topography, density, public health and access rights, or community land use plans. (Gov. Code, §§ 66473-66474, 66478.1 et seq.; former Bus. & Prof. Code, § 11549.5.) It is significant that several of these statutory concerns are precisely those which the plaintiff seeks to raise. Additionally, at the time of approval of the instant map, the Ventura County subdivision ordinance (of which we may take judicial notice; Evid. Code, §§ 452, subd. (b), 459, subd. (a)) extended similar approval standards even to tract divisions which were not covered by the state act. (County of Ventura, Ord. No. 2747, § 8210.)

Resolution of these issues involves the exercise of judgment, and the careful balancing of conflicting interests, the hallmark of the adjudicative process. The expressed opinions of the affected landowners might very well be persuasive to those public officials who make the decisions, and affect the outcome of the subdivision process.

In therefore rejecting the concept that subdivision approvals are purely "ministerial" acts requiring no precedent notice or opportunity for hearing, we thereupon proceed to consider defendant and real party's secondary arguments.

Real party urges that plaintiff suffered no significant deprivation of property which would invoke constitutional rights to notice and hearing. However, as we emphasized in *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137], land use decisions which "substantially affect" the property rights of owners of adjacent parcels may constitute "deprivations" of property within the context of procedural due process. (Pp. 548-549.) Plaintiff herein alleges that the subdivision plan as currently constituted will substantially interfere with his use of the only access from his parcel to the public streets, and will increase both traffic congestion and air pollution. From a pleading standpoint, plaintiff has thus adequately described a deprivation sufficiently "substantial" to require procedural due process protection. (For a contrary view, see *Feldman* v. *Star Homes* (1951) 199 Md. 1 [84 A.2d 903], and *Hancock* v. *City of Concord* (1974) 114 N.H. 404 [322 A.2d 605].)

It is argued that because plaintiff must reasonably have anticipated when he bought his land that the adjacent property would be subject to residential subdivision, he thereby suffered no "deprivation" unlike the *Scott* homeowners, who confronted an unexpected commercial development. Plaintiff's complaint, however, is not directed to the fact of the

subdivision itself, but rather avers that the particular details of the current plan have caused him injury.

Defendant and real party also stress the danger that to hold subdivision approvals subject to notice and hearing requirements is too broad and sweeping a result, necessarily bringing in its train land use control devices, including the very issuance of building permits. ■ We emphasize, however, that constitutional notice and hearing requirements are triggered only by governmental action which results in "significant" or "substantial" deprivations of property, not by agency decisions having only a de minimis effect on land. Nor would action involving only the nondiscretionary application of objective standards entitle a landowner to such protections.

Finally, it is urged that the Subdivision Map Act itself cannot contemplate notice and hearing procedures even as to larger subdivisions, because the act provides for automatic approval of a tentative map if the local entity does not act within a specified period after the application for approval is filed. (Gov. Code, § 66452.4.) It is a sufficient response to note that the due process requirements discussed herein are not rooted in statute but are compelled by the stronger force of constitutional principle.

■ We therefore conclude that, whenever approval of a tentative subdivision map will constitute a substantial or significant deprivation of the property rights of other landowners, the affected persons are entitled to a reasonable notice and an opportunity to be heard before the approval occurs. As we have explained, plaintiff has sufficiently alleged such deprivation.

■ 2. *The Notice and Hearing Were Inadequate*

Plaintiff has averred that he exhausted all of his available administrative remedies by his futile appearances before the board. In its demurrer, defendant county charges that the petition defectively fails to recite any participation in the county's procedures for environmental review of private projects under CEQA. It is contended that any due process requirements are met by the utilization of these statutory procedures, but, after examining them, we disagree and focus initially on the notice requirement.

The county's CEQA procedures are contained in an "Administrative Supplement to the State Resources Agency Guidelines for Implementa-

tion of the California Environmental Quality Act of 1970" (supplement) adopted by the board on March 4, 1975. We may, and do, take judicial notice of these regulations. (See Evid. Code, §§ 452, subd. (b), 459, subd. (a), *supra.*) Under the supplement, all CEQA documents, including "negative declarations," are posted in three different county offices. Interested citizens may also request notice by mail of all environmental matters pending before county agencies. (Art. 5, F, 2, subd. b.) "Citizen consultation" and "public review" are recognized in the procedures, but formal public meetings may or may not be scheduled, depending on the environmental significance of a particular project. (Art. 5, F, 1, subd. b.)

Moreover, while the environmental impact report (EIR) is to include a general assessment of effects of the proposal on private property and the quality of life in the vicinity of the project, it does not necessarily focus on the individual concerns of particular landowners who may be directly affected. (Appen. 1, § 2.) There is provision for an ultimate administrative appeal to the board from environmental decisions, but the scope of the appeal is limited to the adequacy of the EIR or negative declaration. The general feasibility and desirability of the project are expressly excluded from consideration. (Art. 5, G, 3.)

■ The general application of due process principles is flexible, depending on the nature of the competing interests involved. (E.g., *Goss* v. *Lopez, supra,* 419 U.S. 565, 583 [42 L.Ed.2d 725, 739-740]; *Boddie* v. *Connecticut, supra,* 401 U.S. 371, 378 [28 L.Ed.2d 113, 119]; *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 209; *Beaudreau* v. *Superior Court, supra,* 14 Cal.3d 448, 458.) ■ The extent of administrative burden is one of the factors to be considered in determining the nature of an appropriate notice. (*Hannah* v. *Larche* (1960) 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502]; *In re Tucker* (1971) 5 Cal.3d 171, 179 [95 Cal.Rptr. 761, 486 P.2d 657].) However, where, as here, prior notice of a potentially adverse decision is constitutionally required, that notice must, at a minimum, be reasonably calculated to afford affected persons the realistic opportunity to protect their interests. (See *Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. 306, 313; *Beaudreau* v. *Superior Court, supra,* 14 Cal.3d 448, 458; *Scott* v. *City of Indian Wells, supra,* 6 Cal.3d 541, 549.)

■ The notice provided by the county's CEQA regulations fails to meet the foregoing standard. By limiting itself to the posting of environmental documents at central public buildings, and mailings of notice to those persons who specifically request it, the county has manifestly placed the burden of obtaining notice solely on the concerned

individuals themselves. While such posting and mailing may well suffice to encourage the generalized public participation in the environmental decision making contemplated by CEQA, they are inadequate to meet due process standards where fundamental interests are substantially affected. Those persons significantly affected by a proposed subdivision cannot reasonably be expected to place themselves on a mailing list or "haunt" county offices on the off-hand chance that a pending challenge to those interests will thereby be revealed. Other forms of notice appear better calculated to apprise directly affected persons of a pending decision.

We deliberately refrain from describing a specific formula which details the nature, content, and timing of the requisite notice. Rather, we leave to the affected local governments these determinations. We do observe, however, that depending on (1) the magnitude of the project, and (2) the degree to which a particular landowner's interests may be affected, acceptable techniques might include notice by mail to the owners of record of property situate within a designated radius of the subject property, or by the posting of notice at or near the project site, or both. Notice must, of course, occur sufficiently prior to a final decision to permit a "meaningful" predeprivation hearing to affected landowners. (See *Bell* v. *Burson* (1971) 402 U.S. 535, 541 [29 L.Ed.2d 90, 95-96, 91 S.Ct. 1586]; *Beaudreau* v. *Superior Court, supra,* 14 Cal.3d 448, 458.)

The procedures we have described could readily be adapted from those widely employed in land use planning procedures. In fact, both the Subdivision Map Act (Gov. Code, § 66451.3) and the county's own current subdivision ordinance (County of Ventura, Ord. No. 3105, § 8250-1, subd. (c)) already require some form of public notice in certain circumstances. The map act additionally recognizes the ability of local governments to devise "reasonable" notice. Our holding today thus appears to impose no insupportable additional administrative burden on defendant county.

Defendant argues, however, that in the present case the mail-request and central-posting methods of notice were adequate because any owner of plaintiff's lot should have been aware that adjacent property would at some time probably be subdivided, from which it would follow, defendant suggests, that such an owner could reasonably be expected to take some initiative to learn the details of any proposed subdivision plan. This contention is largely refuted by the fact, conceded by all parties, that neither plaintiff nor any other affected landowner received any actual notice of the pending subdivision approval until plaintiff fortuitously learned of it from the developer himself on December 6, long after the

planning department had completed its review of the tentative map, and three days before final board action was scheduled. We are unable to agree that whenever there is any substantial reason to suspect an eventual change in use, the burden of obtaining notice thereupon shifts to the affected owner.

In any event, apart from the inadequacy of the notice, the county's environmental evaluation process itself does not fairly constitute an adequate "hearing." ■ The CEQA procedures are intended only to evoke and record a public response limited to the *general* environmental aspects of a proposed project. For these purposes, public hearings *may* be employed, but are not required. Thus, the CEQA process does not guarantee an affected landowner a "meaningful" predeprivation hearing (*Bell* v. *Burson, supra,* 402 U.S. 535, 541; *Beaudreau* v. *Superior Court, supra,* 14 Cal.3d 448, 458) at which his *specific* objections to the threatened interference with his property interests may be raised. Accordingly, the existence of the CEQA procedures neither satisfies the due process demands of plaintiff's claim nor constitutes a "remedy" which he was required to exhaust. (See *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 691 [94 Cal.Rptr. 421, 484 P.2d 93].)

### 3. *Plaintiff Has Standing*

■ Real party contends that, even if abstract rights to notice and hearing exist, plaintiff is not entitled to relief because he had not yet purchased his property at the time the tentative map was initially approved by the Ventura County Planning Department. ■ The argument is directed at plaintiff's standing to sue and may be raised for the first time on appeal. (Code Civ. Proc., § .430.80; *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].)

■ Nonetheless, we cannot accept the contention. As we have explained, notice and hearing must be afforded at some "meaningful" point in the approval process. It is argued that to grant plaintiff relief would permit him to assert the constitutional rights of others because he was not an affected landowner, not having acquired ownership until after the planning department's approval. However, plaintiff has alleged that the approval process was *not yet final* when he purchased his property, because an appeal to the board of supervisors of the planning department action was then pending. Moreover, the complaint avers that no *prior* notice or hearing had previously been given to *any* affected landowner, or to plaintiff or his predecessor.

If, at the time of plaintiff's purchase, the county had already provided an adequate notice and opportunity for hearing to affected landowners

then of record, the county would not, of course, be constitutionally required to repeat the process for subsequent purchasers, either before or after a final decision. Because it allegedly had not done so, however, the constitutional issues remain at large. It follows, accordingly, that plaintiff may assert his own claim to due process before he is finally deprived of a presently existing property interest.

Nor did the fact that plaintiff accidentally received notice of the hearing on real party's appeal constitute a waiver of plaintiff's own right to assert constitutional defects. At that hearing the board confined its review to the issue raised by the developer and rejected all requests by plaintiff and other landowners for more extended reconsideration. (But see County of Ventura, Ord. No. 2844, § 8211, subd. (a), *supra.*) The "notice" received by plaintiff obviously led to no "meaningful" vindication of his due process rights.

We therefore conclude that plaintiff has standing to assert his constitutional rights to notice and hearing in connection with the instant subdivision approval. The general demurrer to the petition for writ of mandate should not have been sustained.

The judgment is reversed and the cause is remanded to the trial court with directions to overrule the demurrer to the petition for writ of mandate. The trial court is further authorized to award plaintiff trial and appellate attorneys' fees if it determines that this case "has conferred a significant benefit . . . on the general public or a large class of persons" and that "the necessity and burden of private enforcement are such as to make the award appropriate." (Code Civ. Proc., § 1021.5, subds. (a), (b).) The trial court shall determine the amount of any fees to be awarded. Plaintiff shall recover costs.

Tobriner, J., Mosk, J., and Clark, J., concurred.

Bird, C. J., and Manuel, J., concurred in the result.

**NEWMAN, J.**—I concur, but I do not agree with this dictum of the majority: "[O]nly those governmental decisions which are *adjudicative* in nature are subject to procedural due process principles. *Legislative* action is not burdened by such requirements."[1]

---

[1](*Ante,* p. 612.) I wonder too why "the exercise of judgment, and the careful balancing of conflicting interests, [are] the hallmark of the adjudicative process." (*Id.,* p. 615.) Do they not mark also the work of conscientious legislators?

I do not know whether the hackneyed quotation from *Bi-Metallic Co. v. Colorado* (1915) 239 U.S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141], was an accurate description of lawmaking when Justice Holmes wrote it. More than a half-century later, however, we hardly should proclaim that fundamental rights in this country are protected from harmful statutes and harmful regulations only because of individuals' "power, immediate or remote, over those who make the rule."

Notice and hearing now characterize the great bulk of legislating and rulemaking. Often the forms of notice and hearing differ greatly from those that typify most adjudication procedures.[2] Yet the appropriate protections of due process are there; and we should not encourage legislators and rulemakers who conceivably yearn for a more comfortable past—when often they did proceed without notice, without hearing, in protective secrecy. (See Nathanson, *Probing The Mind of the Administrator* . . . (1975) 75 Colum.L.Rev. 721, 724 ["The Advent of Informal Rulemaking: From *Bi-Metallic* to *Florida East Coast* and the APA"]; 1 Davis, Administrative Law Treatise (2d ed 1978) p. 449 ["due process limitations in the background, *always present* but seldom brought to the foreground" (italics added)]; cf. *id.,* § 6:31 ["Should Courts Require Notice and Comment Procedure for Rules the APA Exempts from That Requirement?"]; Davis, *The Requirement of a Trial-Type Hearing* (1956) 70 Harv.L.Rev. 193, 201 ["More harmful than helpful is the proposition . . . that hearings are required for judicial functions but not for legislative functions"]; see too Linde, *Due Process of Lawmaking* (1976) 55 Neb.L.Rev. 197.)

For the same reasons I think it is time to disapprove intended implications of the analogous dictum in *San Diego Bldg. Contractors Assn. v. City Council* (1974) 13 Cal.3d 205, 211 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973] ("it is black letter constitutional law that due process requires 'notice and hearing' only in quasi-judicial or adjudicatory settings and not with respect to the adoption of general legislation").

On August 29, 1979, the judgment was modified to read as printed above.

---

[2]See, for example, article 4 of chapter 4.5 of the California Administrative Procedure Act (Gov. Code, §§ 11420-11425); compare *Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 204 [149 Cal.Rptr. 1, 583 P.2d 744]; Newman, *Two Decades of Administrative Law in California: A Critique* (1956) 44 Cal.L.Rev. 190, 193 ("The Bar has shown startlingly little concern regarding improvements in administrative rule making").