[No. G004889. Fourth Dist., Div. Three. May 16, 1989.]

TRANSWORLD SYSTEMS, INC., Plaintiff and Appellant, v. STEVE JOHN ROGAN, Defendant and Respondent.

COUNSEL

Brachfeld & Sheppard and Joan S. Sheppard for Plaintiff and Appellant.

Richard B. Blum for Defendant and Respondent.

OPINION

CROSBY, J.—The trial court granted judgment for the defendant in this debt collection action because plaintiff failed to prove it was a licensed collection agency. We hold a denial on lack of information and belief in a verified answer is insufficient to place that issue in controversy.

I

Transworld Systems, Inc., as assignee of ITT Life Insurance Corporation, sued Steve John Rogan for money due on a written contract. Transworld alleged its status as a licensed collection agency in a verified complaint. Rogan's verified answer denied that and other allegations on a lack of information and belief.

No evidence as to plaintiff's licensure was presented by either side in the court trial. During closing argument, counsel for defendant asserted, "Plaintiff . . . purports to be a licensed and bonded collection agency. And under the Business and Professions Code, they cannot collect debts unless

they are licensed. There has been no proof of that. [¶] Business and Professions Code section[s] 6850 and 6956 are the relevant code sections as alleged in the complaint. And there's been no proof that they are licensed." Counsel also argued plaintiff failed to prove it held a valid assignment to collect the sued-upon debt; but the record does not support that claim, nor does defendant urge it here.

Plaintiff's attorney moved to reopen to establish his client was a licensed collection agency or, alternatively, to have the court telephone the appropriate state agency to verify that status. Both requests were denied. The court first observed the licensing question was "placed in issue by the [defendant's] denial [on lack of information and belief]" and then concluded, "the point raised by [defendant's attorney] is a point that I cannot ignore and disregard, and it does affect the standing of this plaintiff to prosecute this lawsuit against this defendant. [¶] And on the basis of the failure of [ ] proof as to the license status which is a prerequisite, as I understand it under the law, to the bringing of the action by this assignee, the court would have to treat the matter as dispositive of the case. [¶] So on that basis then I will give judgment for the defendant."

Transworld argues that matters of official record may not be effectively denied on information and belief; consequently, the licensure question was never properly placed in issue and it had no burden to prove its status. We agree.

## II

An unbroken chain of California decisions holds that allegations relating to the contents of official records may not be effectively placed in issue by a denial on information and belief. (See, e.g., 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 990, pp. 415-416 [citing numerous cases].) The rationale for the rule is obvious: Why allow defendants to inject superfluous issues into lawsuits when, by letter or telephone call to a public agency, they may easily satisfy themselves of their lack of merit?

Remarkably, the dissent pointedly refuses to follow a holding of our Supreme Court, *Art Metal Const. Co.* v. *A.F. Anderson Co.* (1920) 182 Cal. 29 [186 P. 776], despite *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]. (See also *Werner* v. *State Bar* (1954) 42 Cal.2d 187, 195 [265 P.2d 912]; *Mulcahy* v. *Buckley* (1893) 100 Cal. 484, 487-489 [35 P. 144].) ██ ██ ██ ██ ██ It also rejects or ignores seven Court of Appeal decisions described in the Witkin passage cited in the preceding paragraph. California law is clear: A defendant's

denial on information and belief does not raise a triable issue as to the license status of the plaintiff.[1]

The judgment is reversed and the cause remanded for a new trial. Appellant is entitled to costs.

Sonenshine, Acting P. J., concurred.

**WALLIN, J.,** Dissenting.—I disagree with the majority's conclusion that a defendant must bear the onerous burden of conclusively establishing the truth or falsity of a matter of public record within the statutory time for answering a verified complaint. While the majority blithely asserts a defendant may easily contact the appropriate public agency by telephone or letter, the reality is not so simple. Anyone who has tried to elicit information from a public agency is likely to have experienced the frustration of unanswered questions unless he knew in advance exactly which agency, department, telephone number or extension to contact.

The relatively few authorities providing any justification for the general rule rely on a faulty premise: the easy accessibility of public records. Literally tens of thousands of federal, state and local agencies issue myriad licenses, permits and "public records" every day. Filing cabinets, warehouses and computer banks throughout the nation are jammed with them. Any trial lawyer who has investigated a product liability case or any homeowner who has searched for an old building permit can attest to the time and expense involved. Yet the majority concludes that whenever a plaintiff bases an allegation on a public record (which the plaintiff must possess), the defendant, before answering, must prove the negative fact that the record does not exist. If he cannot do so, he is deemed to have admitted the allegation.

---

[1] Our dissenting colleague's concern that it will be burdensome for defendants to verify plaintiff's status in the 30-day period to answer is unpersuasive for several reasons. First, plaintiff's complaint will invariably disclose exactly what agency should have the record of its license. Defendant will know where to look and in many, if not most, cases can verify status by telephone or letter addressed to the appropriate agency or plaintiff's counsel. Second, multiple extensions to answer are probably the rule rather than the exception. The defendant will usually have 60 to 90 days to investigate plaintiff's status. Third, defendant need not deny status in the answer. As a matter of public policy, the fact of nonlicensure may be raised as an affirmative defense to an action by an unlicensed collection agency by motion before, during, and after trial, whether asserted in the answer or not. (See, e.g., *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 619 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]; *Grossman* v. *Vaupel* (1970) 13 Cal.App.3d 706, 710 [91 Cal.Rptr. 876]; 5 Witkin, *supra,* Pleading, § 1019, pp. 435-436.) These cases illustrate that a lack of status must be affirmatively raised, however. A denial on information and belief in a verified answer followed by nothing else is not enough, particularly where, as discussed above, the matter is of public record.

I believe the better rule is to allow a defendant who is uncertain of a record's status to answer by denying its existence on information and belief. Determining whether it *actually* exists should be postponed until the discovery stage. This rule has the additional benefit of encouraging the prompt filing of an answer. Where the public record is significant, the majority's holding, by contrast, will tempt a defendant to challenge the pleading by demurrer or other motion simply to gain time to search for the record or obtain it through discovery before answering.[1]

Of course even an extensive, unsuccessful search by a defendant does not prove the nonexistence of the record; it proves only that the defendant did not find it. But this problem is inherent in a pleading rule which forecloses contesting the issue when a defendant truthfully denies, based on information and belief, that the record exists.

At another point the majority suggests "the fact of nonlicensure may be raised as an affirmative defense . . . ." (Maj. opn., p. 734, fn. 1.) But, they add, where, as here, plaintiff has pleaded it possesses the license, "A . . . denial on information and belief does not raise a triable issue as to the license status of the plaintiff." (Maj. opn., pp. 733-734.) In other words, Transworld is deemed to be licensed because Rogan's denial on lack of information and belief was insufficient to controvert the issue. How can an affirmative defense overcome a matter admitted by the answer? Does the majority intend to establish a new special pleading rule that the absence of a public record can be controverted by an affirmative defense, even though the record is admitted by the answer? If so, does this rule apply to all plaintiffs who must have a license or some other document to pursue their claim? To all public records pleaded by plaintiffs?

The majority fails to answer these questions for trial courts. In this case, since Rogan's denial was ineffective to controvert the license issue and he pleaded no affirmative defenses, Transworld must be deemed properly licensed. Apparently the "new trial" ordered by the majority is merely to repeat the evidence of the debt, including any defense to it.

---

[1] The majority suggests "multiple extensions to answer [complaints] are probably the rule rather than the exception" so that a "defendant will usually have 60 to 90 days to investigate plaintiff's status." (Maj. opn., p. 734, fn. 1.) But the opposite is true in collection cases and expressly violates legislative policy and trial court rules in many others. Collection plaintiffs are anxious to move forward and avoid further delay on the claimed past due obligation. New "fast track" legislation (Gov. Code, § 68600 et seq.) and local trial court rules implementing it discourage extensions and even sanction lawyers for agreeing to them. While some lawyers may be willing to extend time, it is certainly preferable to demand that a party required to have a license or public record produce it, rather than delay a case while the other side searches for it.

It makes more sense to place the burden of proving the existence of a public record on the party required to possess it. Proof of a license is a preliminary issue which can be disposed of simply and quickly at trial by either a stipulation or the introduction of a certified copy. Alternatively, and preferably, the fact can be established pretrial by a request for admission with a copy of the license attached.

The cases cited by Transworld do not convince me otherwise. In *Oliver* v. *Swiss Club Tell* (1963) 222 Cal.App.2d 528 [35 Cal.Rptr. 324], the court held that the defendant Swiss Club Tell could not deny, on information and belief, its *own* status as an unincorporated association since the information could have been conclusively determined by reference to its own records. (*Id.,* at p. 540.) This is not the case here. Rogan did not deny either a matter concerning himself or a matter that could have been determined by reference to materials in his own possession.

In *Curtin* v. *Salomon* (1926) 80 Cal.App. 470 [251 P. 237], the defendant had denied, on insufficient *information,* that the plaintiff was doing business under a fictitious name and that the necessary certificate had been filed. The court determined the defendant's denial was improper in form because it was not also based on his lack of *belief*; thus, the denial did not raise an issue. (*Id.,* at pp. 474-475.) Although the court recited the general rule that no issue can be raised by denying a matter of public record on information and belief, it did not rely on it.

In *Meyer* v. *Selggio* (1947) 80 Cal.App.2d 161 [181 P.2d 690], the trial court granted judgment on the pleadings for the plaintiff in an action to recover a broker's commission for the sale of a hotel. The broker had alleged his license and fictitious name status. The seller denied both on lack of information or belief. The court concluded in part that the defendant admitted the license and fictitious name status of the plaintiff because these matters could have been ascertained from public records. Despite the denial on lack of information or belief, however, the answer was so replete with other defects that the seller admitted an entire cause of action in favor of the broker. (*Id.,* at pp. 164-165.)

Also, the broker and seller in *Meyer* were parties to a contractual business relationship; Transworld and Rogan were not. Presumably a seller has ample opportunity before and during the relationship to confirm the license of the broker he retains. By contrast, in collection actions the agency, as an assignee, is a stranger to the debtor and the transaction. The debtor does not

participate in selecting the agency and it may be unknown to him until the lawsuit is served; he has no opportunity to investigate its license status beforehand. In addition, the initial relationship of broker-seller is cooperative, at least until a commission dispute arises, but the relationship between a collection agency and a debtor is always adversarial.

Lastly, in *Art Metal Const. Co.* v. *A.F. Anderson Co.* (1920) 182 Cal. 29 [186 P. 776], the court relied on the general rule to conclude "[t]he allegation of the corporate capacity and existence of the plaintiff could not be successfully denied upon information and belief . . . ." (*Id.,* at p. 33.) Whatever the rule's merits may have been nearly 70 years ago when *Art Metal* was decided, they no longer exist. The proliferation of public records and, in this case, the relationship between a debtor and a collection agency render the rule impractical and unfair.

These old cases reflect a period when pleadings were virtually the only means of resolving issues prior to trial. Today, pretrial discovery, including requests for admission of facts or the genuineness of documents, is the primary vehicle for pretrial issue determination, and pleadings have diminished in importance.[2]

I am also unimpressed with the majority's citations to ostensible authority in support of its premise that "[a]s a matter of public policy, the fact of nonlicensure may be raised as an affirmative defense to an action by an unlicensed collection agency by motion before, during, and after trial, whether asserted in the answer or not." (Maj. opn., p. 734, fn. 1.) Two of the three cases cited have nothing to do with licensing or the timing of its proof, and the third is devoid of any discussion of when the licensing issue must be raised.

*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605 [156 Cal.Rptr. 718, 596 P.2d 1134] is a California Environmental Quality Act case. A party unsuccessfully contended the plaintiff was not entitled to relief because he had not purchased his property by the time the planning department had approved

---

[2] Two other cases mentioned in the majority opinion provide little support for its holding. In *Werner* v. *State Bar* (1954) 42 Cal.2d 187, 194-196 [265 P.2d 912] the Supreme Court granted readmission to the bar to a disbarred lawyer despite allegations he had made unwarranted denials in verified pleadings of matters in public records. The unsigned plurality opinion merely holds signing the verifications did not indicate a lack of good moral character. *Mulcahy* v. *Buckley* (1893) 100 Cal. 484 [35 P. 144] is a dusty relic discussing pleading rules of little relevance today.

a tentative map. The court noted in passing that an argument "directed at [a] plaintiff's standing to sue . . . may be raised for the first time on appeal." (*Id.,* at p. 619.) Our case does not involve standing.

*Parker* v. *Bowron* (1953) 40 Cal.2d 344 [254 P.2d 6] involved a mandate proceeding to compel city officials to pay certain city employees the prevailing private industry wage; it was brought by an official of a federated labor council on behalf of several unincorporated unions. The city challenged both the plaintiff's standing and the unions' capacity to sue. The court noted that while *standing* may be raised for the first time on appeal, *capacity* must be raised by demurrer or answer, or it is deemed waived. The court explained: "Incapacity is merely a legal disability, such as infancy or insanity, which deprives a party of the right to come into court. The right to relief, on the other hand, goes to the existence of a cause of action." (*Id.,* at p. 351.) *Parker* supports *my* position; while an unlicensed collection agency may possess a valid assignment and have standing to sue (*National Reserve Co.* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 827, 831 [112 P.2d 598]; 1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (1988) §§ 2:6-2:7, pp. 2-2, 2-3), it is statutorily deprived of the capacity to sue for payment. Since the failure to possess a license deprives an agency of capacity to sue, any challenge must be raised by demurrer or answer—or the issue is deemed waived. (I Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* §§ 2:46-2:49, at p. 2-12.)

*Grossman* v. *Vaupel* (1970) 13 Cal.App.3d 706 [91 Cal.Rptr. 876], a municipal court case certified to the Court of Appeal, at first blush would seem to say otherwise. Grossman, an attorney's wife, filed a complaint alleging she was the assignee of three of his law firm's clients. The municipal court sua sponte inquired of her counsel whether Grossman was licensed and bonded. She was not. It then received testimony she was not an employee of the firm. The trial court found Grossman lacked *capacity* to sue and entered judgment for the defendant.

The majority cites *Grossman* to support its contention nonlicensure may be raised at any time. This is completely at odds with *Parker*'s holding that capacity must be raised by demurrer or answer, or is waived. *Grossman* does not discuss when capacity must be challenged; it merely recites the rule that only holders of valid collection agency licenses—or those exempt from licensing—may collect claims for others. (13 Cal.App.3d at p. 710.) And *Grossman* is a two-edged sword for my colleagues; it assumes the burden to prove licensure rests with the agency.

In conclusion, I would affirm the judgment because Rogan's answer denied Transworld's allegation it was licensed and Transworld did not prove otherwise.