SOUTHWICK, P.J.,
for the Court.
¶ 1. The Mayor and Board of Aldermen of the City of Ocean Springs granted a request to divide an acre lot into two lots. Several neighbors appeal and allege that insufficient notice was given of the matter, and that the decision was arbitrary and capricious. We find no error and affirm.
¶ 2. Shannon Moran owns a lot in Ocean Springs. There is no evidence in this record of its being part of an existing subdivision for which a survey plat had been duly recorded. The dimensions of the lot prior to the split was approximately 210 feet in width and 233 feet in depth. The split that was approved divided the lot into two relatively equal parts, the larger having 110 feet of frontage.
¶ 3. Appellants are Peggy Hinds, E.R. Friar, Jr., Willene D. Friar and Jerry L. Pelham, who live near the Moran property. They allege that the smaller lots are inconsistent with the current character of the neighborhood.
¶ 4. Moran first requested a variance for her lot, but no subdividing of it, in February 1999. The zoning and adjustment board of the City of Ocean Springs heard her request for a lot width and side yard variance. This board recommended approval. The Mayor and Board of Aider-men reviewed and approved the recommendation.
¶ 5. Soon thereafter, Moran applied for a lot split with the City Planning Commission. That body approved the request, but the Board of Aldermen denied it because the proposed frontage was about 90 feet while the zoning regulations typically required a minimum of 100 feet.
¶ 6. In December 1999, Moran again applied to subdivide her lot. She had revised her plans so that the frontage would be 100 feet. The City Planning Commission heard her proposal which included that a new home would be constructed 34 feet back from the street. After the Commission allowed audience comment, it decided to recommend approval for the lot split. Moran then presented her request to the Mayor and Board of Aldermen. The Board of Aldermen eventually denied this request. Moran unsuccessfully appealed to circuit court.
¶ 7. Moran repeated this process in February 2000, this time with plans for the home to be set back 53 feet with a frontage of 100 feet. That too was denied. In April 2001, Moran again presented a plan to the Board of Aldermen. This proposal included a set back of 64 feet with 100 feet of frontage. The Board voted to grant the split. Some of her neighbors filed a bill of exceptions and appealed to circuit court. *113 The decision was affirmed. Now the neighbors appeal to us.
DISCUSSION

1. Notice

¶ 8. The objectors argue that there was insufficient notice given for the April 2001 Board of Aldermen hearing at which the lot split was approved. The record indicates that the matter of the Moran lot split had been considered at several meetings. On Friday, April 6, 2001, notice was published “at the City Hall” that there would be a meeting on Monday, April 9, regarding the lot split. A transcript appears of the meeting on April 9, at which Moran and opponents of her plan spoke to the Board. The Board approved the plan at that meeting.
¶ 9. The objectors refer to a statute which requires fifteen days notice by publication for certain kinds of hearings. Miss. Code Ann. § 17-1-15 (Rev.2003). The statute applies to action on zoning ordinances, subdivision regulations, capital improvement program, or a comprehensive plan for development. No such category of action occurred here.[1] The objectors also allege a general due process right to greater notice than was given.
¶ 10. The starting point for considering the argument about the notice is to determine what statutory or other authority of the City was invoked when this lot split was considered. Upon defining the action, we can better determine what notice was due by statute or ordinance.
¶ 11. Mrs. Moran was asking municipal officials to approve dividing her lot into two, and thereby permitting two residences to be on the property. There is no evidence that the lot was part of a dedicated subdivision, in which a survey of each lot and needed streets appeared on a plat filed with the proper county office for re-cordation. There is a statute controlling the creation of subdivisions of that sort, which also provides for the means by which an alteration or a complete vacating of that plat may be accomplished. Miss. Code Ann. § 17-1-23 (Rev.2003). In some of the completed forms that appear in the record, the blanks for indicating the name of the subdivision in which the land is located and for relevant information about the subdivision plat are filled in with “N/ A,” for “not applicable.”
¶ 12. Instead of reference to a platted subdivision, the Moran lot description in the filings on her request and in the deeds that appear of record used a courses and distances description with a point of beginning at the intersection of two streets. There is no discovered statute controlling what a landowner does in such a situation, unless the statute on “subdivisions” just discussed is stretched to apply to a split of one long-existing, unplatted tract into two parts. We do not find that to be a fair interpretation of the reach of the statute. Instead, what Mrs. Moran wished to do was invoke the general land use powers of the municipality. See Miss.Code Ann. § 17-1-3 (Rev.2003) (general land use powers of local governments); Miss.Code Ann.- § 17-1-7 (power to adopt zoning regulations).
¶ 13. Under that general authority, the City of Ocean Springs adopted this rule:
Upon request of the property owner, a previously established or platted lot may be divided into only two parcels of land ... when, in the opinion of the mayor [and] board of aldermen, such a lot split *114 is in keeping with the intent of these rules and regulations, and when approval of the lot split will provide for a development, the character of which will be conformable with the existing platting and development, in the general neighborhood of the proposed lot split.
Ocean Springs, Miss., ORdinances art. II, § 8.1 (Rev.1985). Therefore, before any-existing lot could be split into two — even one that after the split would comply with applicable zoning rules — the City had to be presented the proposal for its review and approval. No specific procedure, and most relevantly, no reference to the form or timing of notice appears in the ordinances that have been presented to us. On this record, then, we are left with determining whether the City afforded the process that was due under more general principles.
¶ 14. There is no generic “due process.” Procedural fairness depends on context. If there is a deprivation of life, liberty or property, then the relevant process will depend on the time, place and circumstances of the interest and the deprivation. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (three-part test established). As to the adequacy of notice, the Supreme Court has seemingly held that even after Eldridge, an older rule applies. Whenever a person’s life, liberty or property interests may be affected by legal proceedings, the notice must be “reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” Dusenbery v. United States, 534 U.S. 161, 169, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002), quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 319, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
¶ 15. The most serious problem for the objectors is that they have not identified a constitutionally protected interest. They cite a California case that a zoning decision which would lead to an increase in traffic and pollution would “substantially affect” property interests and invoked constitutional due process requirements. Horn v. County of Ventura, 24 Cal.3d 605, 156 Cal.Rptr. 718, 596 P.2d 1134, 1138-39 (1979). Under that standard, the objectors here would have to show that transforming the single Moran lot into two lots, would substantially affect their property interests. We find no such evidence.
¶ 16. Generally, land use adjudications about one parcel do not affect the neighbors’ constitution-based property or liberty interests. “Their complaint is that the City’s operation of the shelter in the vicinity of their property will cause a decline in property values. Governmental action of that sort has never been held to ‘deprive’ a person of property within the meaning of the Fourteenth Amendment.” BAM Historic Dist. Ass’n v. Koch, 723 F.2d 233, 237 (2d Cir.1983). Absent proof of a significant impact on the values of the objectors’ property, no property interest exists for which some process is due as a matter of constitutional right.
¶ 17. It is of no small moment here, at least as to equities, that substantial participation by objectors occurred at the April 9, 2001 hearing. The notice may have been given only three days earlier, but many of those opposed to the lot split participated in the hearing with counsel. The neighbors and citizens of Ocean Springs had long known that Moran was seeking to split the lot. Her first request to do so was in 1999. Notice was given on April 6, 2001 that the matter would be considered on April 9. No statutory notice requirement was violated, as none was applicable. Constitutional process was not due, as no property deprivation existed. There was no defect in notice.

*115
2. Substance of decision

¶ 18. Even if all the notice needed was given, the objectors claim that the decision to split the lot was improper. We note that the property was zoned “R-l,” which under local ordinances required a 100 foot-wide lot. The approved split created lots that met that requirement. A petition had been earlier signed by many of the residents of her street requesting that the City maintain the 100 foot minimum frontage for the neighborhood. In October 1999, the Planning Commission recommended the approval of Moran’s request because “compliance with the requirements of the Subdivision Regulations insofar as the square footage would exceed the requirement by approximately 50% and the full Zoning and Adjustment Board’s prior approval of a lot width and side yard variance.” There was also evidence that lots on the opposite side of the affected street were about the size of Moran’s newly split lots.
¶ 19. We acknowledge that the split lots were not rectangular, and there is an objection based on the fact that one lot bulged into the other. Yet we find nothing objectively in error about the decision. The City argues that its decision was “legislative” in nature. If so, then its order “may not be set aside if its validity is fairly debatable, and such order may not be set aside by a reviewing court unless it is clearly shown to be arbitrary, capricious, discriminatory or is illegal or without substantial evidential basis.” Barnes v. Bd. of Supervisors, DeSoto County, 553 So.2d 508, 510 (Miss.1989).
 ¶ 20. However, even though the adoption of “zoning ordinances are legislative acts, conditional use permits are adjudicative in nature. An individual seeking a conditional use permit bears the burden of proving by a preponderance of the evidence that he has met the elements necessary to obtain a permit.” City of Olive Branch Bd. of Aldermen v. Bunker, 733 So.2d 842, 844 (Miss.Ct.App.1998), citing Barnes, 553 So.2d at 510-11. We find this decision as to one particular lot, which then became two lots, to be adjudicative and not legislative.
¶ 21. On that basis, we review whether there was substantial evidence to support the decision. The evidence indicated large lots on one side of the street, somewhat smaller lots on the other, with the split lot having a significant set-back requirement to reduce the aesthetic effect on the neighborhood. This was a discretionary decision. There was adequate evidence to support it. We affirm.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.

. A useful description of these categories of action appears in Mary E. Miller, Zoning & Land Use, §§ 6-9, in Jeffrey Jackson & Mary Miller, Encyclopedia of Mississippi Law (2003, New Topic Service).