Filed 06/25/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LINOVITZ CAPO SHORES LLC et al., | |
| Plaintiffs and Appellants, | G058331 |
| v. | (Super. Ct. No. 30-2016-00874272) |
| CALIFORNIA COASTAL COMMISSION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Randall J. Sherman, Judge.  Reversed and remanded, with directions.

Aannestad Andelin & Corn, Jonathan C. Corn, Anders T. Aannestad, Lee M. Andelin, Arie L. Spangler; Manatt, Phelps & Phillips and Benjamin G. Shatz for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Daniel A. Olivas, Assistant Attorney General, Jamee Jordan Patterson and Hayley Peterson, Deputy Attorneys General, for Defendant and Respondent.

Wilson Sonsini Goodrich & Rosati, Dale Bish, John B. Kenney and Alexandra Keck for Surfrider Foundation as Amicus Curiae on behalf of Defendant and Respondent.

     \*     \*     \*

    Faced with a potential need to demolish, at minimum, completed second-story additions to their mobilehomes, appellants unsuccessfully petitioned for a writ of mandate declaring that the coastal development permits they sought from the California Coastal Commission (Coastal Commission or Commission) were deemed approved by operation of law under the Permit Streamlining Act (Gov. Code, § 65921 et seq.) (Streamlining Act). In denying the petition, the trial court concluded the Coastal Commission had jurisdiction to require appellants to obtain coastal development permits and the prerequisite public notice to deemed approval under the Streamlining Act did not occur. Appellants contend the trial court erred in both respects.

    We conclude appellants' writ petition should have been granted. The Coastal Commission has concurrent jurisdiction with the California Department of Housing and Community Development over mobilehomes located in the coastal zone. Thus, even though appellants obtained a permit from the latter, they were also required to obtain a permit from the former. The Coastal Commission's failure to act on appellants' applications for costal development permits, however, resulted in the applications being deemed approved under the Streamlining Act. Aside from passage of the necessary amount of time, which is not disputed, the only precondition to a permit being deemed approved by operation of law is provision of "the public notice required by law." (Gov. Code, § 65956, subd. (b) (section 65956(b).) The Coastal Commission's notices of a public hearing concerning appellants' permit applications satisfied this requirement as they were done in accordance with applicable statutes, and regulations promulgated thereunder, as well as in a manner consistent with constitutional procedural due process principles and decisional law. In so concluding, we disagree with the interpretation of the Streamlining Act set forth in *Mahon v. County of San Mateo* (2006) 139 Cal.App.4th 812 (*Mahon*), as the plain language of section 65956(b), does not require an agency's public notice to include a statement that the permit at issue will be deemed approved if the

2

agency does not act on it within a specified number of days. Accordingly, we reverse and remand the matter with directions to the trial court to vacate the existing judgment and enter a new judgment granting appellants' petition.

## FACTS

Appellants are owners of beachfront mobilehomes in Capistrano Shores Mobile Home Park located in the City of San Clemente. Prior to the events giving rise to this lawsuit, each of their mobilehomes was a single-story residence.

Between 2011 and 2013, appellants each applied for, and received, a permit from the California Department of Housing and Community Development (HCD) to remodel their respective mobilehome. They planned to change interior walls, outfit the exteriors with new materials, replace the roofs, and add second stories.

Appellants also applied for coastal development permits from the Coastal Commission. Their applications expressly indicated they were not addressing any component of the remodels for which they obtained HCD permits, including the addition of second stories. Rather, their coastal development permit applications concerned desired renovations on the grounds surrounding the mobilehome structures, including items such as carports, patio covers, and barbeques.

Appellants completed their remodels at various times between 2011 and 2014. During this period, Coastal Commission representatives visited the mobilehome park at least once and took pictures of the renovations underway. The parties appear to dispute whether appellants received, prior to completion of construction, any communication from the Coastal Commission concerning the need for a coastal development permit for their projects.

In February 2014, the Coastal Commission issued notices to appellants that the then-complete renovation of their residential structures was unauthorized and illegal without a coastal development permit. The Coastal Commission gave appellants two options to avoid substantial fines and civil penalties. First, appellants could revise their

3

previously submitted coastal development permit applications to instead request authorization to remove the allegedly unpermitted remodels and resubmit the applications within 30 days. Second, and alternatively, appellants could apply for "after-the-fact" authorization to retain the unpermitted development. The notice, however, indicated Coastal Commission staff would not support requests to retain the second story additions.

Appellants believed the Coastal Commission did not have any authority over their structure renovations, but nevertheless chose to apply for "after-the-fact" permits, reserving their right to later challenge the Commission's jurisdiction. They submitted the necessary materials and paid the mandated fees—five times the amount of the standard permit fees.

The Coastal Commission issued individual public hearing notices for each application. Each notice detailed, among other things, the description and location of the project, the scheduled time, date and location for the Commission's public hearing on the item, the hearing procedures, and the means by which members of the public could provide the Commission with comments. Each one also indicated a copy of the relevant staff report would be publicly available no later than 10 days before the hearing.

In accordance with the notices, the Coastal Commission held a public hearing concerning all the applications on July 14, 2016. Prior to the hearing, the Commission received 36 letters concerning the projects—5 from individual applicants and 31 from the general public. All but one of the letters from the general public supported the applicants' requests for "after-the-fact" permits.

Coastal Commission staff gave a presentation concerning the projects and recommended approval of the applications with certain conditions. Among the suggested conditions was limiting the height of the mobilehomes to 16 feet in order "to protect views to and along the ocean and coastal scenic areas." Approval of such a condition would have required each applicant to demolish their home and start construction anew. The second story additions to their homes, which stood between 20 and 25 above ground

4

level, consisted of bedrooms, so eliminating the second stories necessitated complete redesign and reconstruction of the first story to accommodate bedrooms.

Following a presentation by appellants' representatives, the Coastal Commission considered the applications one-by-one. The first commissioner to speak recognized they were faced with a challenging situation—a need to protect visual resources and public views under the Coastal Act, on one hand, and a desire to avoid the demolition of structures, on the other. She suggested there might be a creative solution to the dilemma. Some other commissioners expressed similar sentiments, while other commissioners expressed support for staff's recommendation even if it meant costly demolition and reconstruction. At one point, a commissioner suggested continuing the matters to a future date to allow more time for negotiations; however, the Coastal Commission's legal counsel stated that was not an option due to an impending deadline under the Streamlining Act.

After the Coastal Commission acted on two applications not at issue in this case, appellants' representative made a proposal concerning the remaining applications that would allow for further discussion about alternatives to Commission staff's recommendation. He indicated appellants' desired to withdraw the applications and resubmit them right away, and he simultaneously requested a commissioner make a motion to waive the standard six-month waiting period for resubmittal and waive all additional fees.

The Coastal Commission discussed and voted on both aspects of appellants' request. First, the Commission unanimously voted to allow immediate resubmission of the applications without any waiting period. Second, the Commission rejected the request to waive or reduce the required fees for resubmittal. Following these votes, the Commission's chair adjourned the meeting.

Neither appellants nor the Coastal Commission took any further action concerning the pending applications.

5

A few months later, appellants filed a petition for writ of mandate. They requested declaratory relief stating their applications were approved, without conditions, by operation of law under the Streamlining Act. They moved for judgment, which the Coastal Commission opposed. The Coastal Commission contended: (1) appellants withdrew their applications prior to the time at which the applications could be deemed approved under the Streamlining Act; (2) the applications were not deemed approved under the Streamlining Act because the requisite notice was not given; and (3) contrary to appellants' assertion, the Coastal Commission had jurisdiction to require coastal development permits in the first instance.

The trial court heard the matter, ultimately finding in favor of the Coastal Commission. It rejected the Coastal Commission's argument concerning withdrawal of the applications, but agreed the Coastal Commission had jurisdiction and the notice prerequisite to deemed approval under the Streamlining Act was not satisfied. To arrive at the latter conclusion, the trial court followed *Mahon*.

Following entry of judgment denying appellants' petition, they timely appealed.

## DISCUSSION

Appellants assert the trial court erred in denying their writ petition for two reasons. First, they claim the Coastal Commission lacked jurisdiction to require a coastal development permit for their projects because HCD has "exclusive jurisdiction over mobilehome construction and design." Second, they argue "[t]he applications should have been deemed approved [under the Streamlining Act] when the Commission failed to approve or disapprove their projects within the time required by law." We disagree with the first contention, but agree with the second.

*A. Coastal Commission and HCD jurisdiction*

Although referred to by the parties as an issue of preemption, the first question before us is more aptly characterized as one concerning the relative jurisdictions

6

of two state agencies.[1]  It appears from the record in this case that at some point in the past, even HCD and the Coastal Commission disagreed about the Coastal Commission's authority, if any, over mobilehome construction and replacement.  Today we resolve any uncertainty.  As explained below, these two state agencies have concurrent jurisdiction with respect to mobilehomes located in the coastal zone.

We begin by examining the statutory schemes from which each agency derives its respective powers—the California Mobilehome Parks Act (Health & Saf. Code, § 18300 et seq.) (MPA) and the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) (Coastal Act).

The MPA vests HCD with the power to regulate the "construction, maintenance, occupancy, use, and design" of mobilehome parks.  (Health & Saf. Code, § 18253.)  Faced with an "increasing numbers of Californians liv[ing] in manufactured homes and mobilehomes[,]" the Legislature enacted the MPA to ensure that "residents of mobilehome parks . . . live in conditions which assure their health, safety, general welfare, and a decent living environment, and which protect the investment of their manufactured homes and mobilehomes." (*Id*. at § 18250.)  The statutory scheme expressly "supercedes any ordinance enacted by any city, county, or city and county, whether general law or chartered, applicable to [the matters covered by it]." (*Id*. at § 18300, subd. (a).)

Pursuant to the MPA, HCD adopted extensive regulations.  (25 Cal. Code Regs., § 1000 et seq.)  The regulations require anyone wishing to, inter alia, "erect, construct, reconstruct, install [or] replace" any building or structure in a mobilehome park

---

[1]  "Where jurisdiction involves the interpretation of a statute, the issue of whether an agency acted in excess of its jurisdiction is a question of law reviewed de novo on appeal. [Citations.]  Moreover, courts do not defer to an agency's determination when deciding whether the agency's action lies within the scope of authority delegated to it by the Legislature. [Citation.]" (*Burke v. California Coastal Com.* (2008) 168 Cal.App.4th 1098, 1106.)

to first obtain a written construction permit from HCD or authorized local government agency. (*Id*. at § 1018, subd. (a).) All construction must be performed in accordance with approved plans and specifications. (*Id*. at § 1044, subd. (a).)

"The Coastal Act 'was enacted by the Legislature as a comprehensive scheme to govern land use planning for the entire coastal zone of California. The Legislature found that "the California coastal zone is a distinct and valuable natural resource of vital and enduring interest to all the people"; that "the permanent protection of the state's natural and scenic resources is a paramount concern"; that "it is necessary to protect the ecological balance of the coastal zone" and that "existing developed uses, and future developments that are carefully planned and developed consistent with the policies of this division, are essential to the economic and social well-being of the people of this state . . . ." [Citations.]' The Coastal Act is to be 'liberally construed to accomplish its purposes and objectives.' [Citation.] Under it, with exceptions not applicable here, any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit 'in addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency . . . .' [Citation.]" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793-794 (*Pacific Palisades*).)

A coastal development permit is obtained through the Coastal Commission or an authorized local government agency, with permits from both sometimes being required. (*Pacific Palisades, supra*, 55 Cal.4th at p. 794.) Coastal development permits embody state policy and "'a fundamental purpose of the Coastal Act is to ensure that state policies prevail over the concerns of local government.'" (*Ibid*.)

8

No case addresses the issue before us,[2] but our analysis is guided by framework set forth by the Supreme Court concerning statutory interpretation and state agency jurisdiction.

"'"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.'" [Citation.] '"If the statute's text evinces an unmistakable plain meaning, we need go no further."' [Citation.] But where . . . a statute's terms are unclear or ambiguous, 'we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part."'" (*Pacific Palisades, supra*, 55 Cal.4th at p. 803.)

And in situations like the present where two statutory schemes are involved, we "'must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions. [Citations.] This rule applies although one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject.' [Citation.] Thus, when '"two codes are to be construed, they 'must be regarded as blending into each other and forming a single statute.' [Citation.] Accordingly, they 'must be read together and so construed as to give effect, when possible, to all the provisions thereof.' [Citation.]"' [Citation.] Further, "'"[a]ll presumptions are against a repeal by implication. [Citations.]' [Citation.] Absent an express declaration of

---

[2] In *Pacific Palisades*, a case cited by the Coastal Commission, the Supreme Court applied the Coastal Act to the conversion of a mobilehome park from tenant occupancy to resident ownership. (*Pacific Palisades, supra*, 55 Cal.4th at p. 797.) However, the disputed issue resolved by the court in that case was whether the conversion constituted "development" under the Coastal Act. (*Id*. at pp. 794-797.) It does not appear the parties raised, and the court did not decide, the relative jurisdictions of HCD and the Coastal Commission. (*In re Chavez* (2003) 30 Cal.4th 643, 656 ["[A] case is authority only for a proposition actually considered and decided therein"].)

9

legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation."' [Citation.]"' [Citations.]" (*Pacific Palisades, supra*, 55 Cal.4th at p. 805.)

Nothing in the MPA expressly displaces the Coastal Act or any other state law. But the Legislature clearly knew how to supersede other laws because it did so in the MPA with respect to city and county ordinances. (Health & Saf. Code, § 18300, subd. (a); see *County of Santa Cruz v. Waterhouse* (2005) 127 Cal.App.4th 1483 [holding MPA expressly preempts local regulation concerning matters addressed by MPA].) The absence of more expansive language covering state laws shows the Legislature did not intend to supplant otherwise applicable state laws. (See *Industrial Waste & Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1154 [presence of language including some but not others indicates Legislative intent to exclude those not included].)

Equally telling is the Legislature's decision to leave unaltered the MPA language concerning displacement of local agency ordinances after enactment of the Coastal Act. The Coastal Act provides, in relevant part: "[I]n addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency, any person . . . wishing to perform or undertake any development in the coastal zone . . . shall obtain a coastal development permit." (Pub. Resources Code, § 30600.) This language evidences the Legislature's intent for the Coastal Act to operate concurrently with other state laws and permitting requirements. Had the Legislature intended HCD to be the sole permitting authority vis-à-vis mobilehomes, the Legislature would have qualified the broad requirement for a coastal development permit and/or amended the MPA accordingly. It did neither.

We also are not faced with a situation in which finding concurrent operation of the statutory schemes would result in an inherent conflict or effectively

10

override policy objectives under the MPA. There is no inherent conflict between HCD having authority over the construction and reconstruction of mobilehomes from a health, safety and general welfare standpoint (Health & Saf. Code, § 18254), and giving the Coastal Commission authority to protect the natural and scenic resources, as well as the ecological balance, in the coastal zone (Pub. Resources Code, § 30001, subds. (b) & (c)). The statutes, and the agencies given authority by them, have distinct purposes. Allowing HCD and the Coastal Commission to operate in tandem preserves and allows for furtherance of the important aims of both the MPA and the Coastal Act.

Harmonizing the MPA and the Coastal Act in this manner "simply creates a system of overlapping jurisdiction, an uncontroversial concept under our law." (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 936; see, e.g., *Id*. at pp. 932-937 [concluding State Board of Forestry and Fire Protection and State Water Resources Control Board have concurrent jurisdiction over timber harvesting activities which affect water resources]; *State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 439-441, [concluding Department of Fair Employment and Housing, Fair Employment and Housing Commission, and State Personnel Board share concurrent jurisdiction over disciplinary actions and examinations involving state civil service employees]; *Orange County Air Pollution Control Dist. v. Public Util. Com.* (1971) 4 Cal.3d 945, 953-954, [recognizing concurrent jurisdiction of California Public Utilities Commission and air pollution control districts].)

Appellants claim the Coastal Commission did not assert any jurisdiction over mobilehome building standards, design or height, for more than 20 years after the Coastal Act took effect in 1976. They further assert there is no record of the Coastal Commission requiring a coastal development permit for the rehabilitation of a mobilehome located in a mobilehome park. Even if true, lack of enforcement by the Coastal Commission does not diminish or otherwise alter its statutorily derived powers. (See *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1369 ["[T]he

11

mere failure to enforce the law, without more, will not estop the government from subsequently enforcing it"].)

Our conclusion is also not affected by appellants' discussion of the National Manufactured Housing Construction and Safety Standards Act of 1976. Appellants waited until their reply brief to put forth an argument related to this federal legislation. We do not entertain arguments raised for the first time in a reply brief. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295.)

In sum, HCD and the Coastal Commission have concurrent jurisdiction over mobilehome construction and replacement in the coastal zone. Accordingly, the Coastal Commission did not exceed its jurisdiction by requiring appellants to obtain a coastal development permit for their respective structural remodels.

B. *Streamlining Act*

Noting the lack of action taken by the Coastal Commission on their applications, appellants contend their applications were deemed approved, without conditions, by operation of law under the Streamlining Act. The Coastal Commission does not dispute the lack of action on its end, but nevertheless maintains deemed approval did not occur because (1) appellants withdrew their applications, and (2) the requisite public notice required for an application to be deemed approved was never given. We agree with appellants.

Regarding the Coastal Commission's argument that appellants withdrew their applications at its July 2019 meeting, the trial court found this factual contention was "at odds with the record." We cannot reweigh the evidence. "'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.]'" (*Bickel v. City of Piedmont*

12

(1997) 16 Cal.4th 1040, 1053 (*Bickel*), abrogated with regard to its construction of the Streamlining Act [Stat.1998, ch. 283, § 5].)

Substantial evidence supports the trial court's finding. Appellants orally indicated their desire to withdraw the applications, but simultaneously asked the Coastal Commission to waive resubmittal fees and the resubmittal waiting period. After voting to waive the resubmittal waiting period, the Coastal Commission's counsel stated it was up to the applicants to decide whether to, in fact, withdraw in light of the Commission's vote. The Coastal Commission then declined to waive the resubmittal fees and the meeting recessed without further comment from appellants or their representative.

Regarding the Coastal Commission's notice argument, the parties agree that some type of public notice is required before an application may be deemed approved under the Streamlining Act, but disagree about what must be included in the notice. This disagreement presents a pure legal issue involving interpretation of section 65956(b), which we review de novo.

"In 1977, the Legislature enacted the Permit Streamlining Act . . . to relieve applicants from protracted and unjustified governmental delays in processing their permit applications. . . . [¶] The Act expressly declares: 'The Legislature finds and declares that there is a statewide need to ensure clear understanding of the specific requirements which must be met in connection with the approval of development projects and to expedite decisions on such projects. . . .' [¶] To expedite decisions on development projects, the Act sets forth a time limit within which a government agency must either approve or disapprove an application for a land-use permit. If the agency fails to expressly approve or disapprove the application within this time limit, it is 'deemed' approved. [Citation.]" (*Bickel, supra*, 16 Cal.4th at pp. 1046-1047.)

As originally enacted, the Streamlining Act did not impose any public notice requirements as a prerequisite to deemed approval. (*Selinger v. City Council* (1989) 216 Cal.App.3d 259, 265 & fn.3.) In *Selinger*, the Court of Appeal concluded the

13

Streamlining Act violated due process because it automatically granted a development permit by operation of law after the passage of a specified time period, "without provision for notice and a hearing to affected landowners." (*Id*. at p. 274.)

Meanwhile, the Legislature amended section 65956(b) to provide, in relevant part: "In the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, the failure to act shall be deemed approval of the permit application for the development project. However, the permit shall be deemed approved only if the public notice required by law has occurred." (§ 65956(b).)

Section 65956(b) also gives an applicant the ability to provide notice: "If the applicant has provided seven days advance notice to the permitting agency of the intent to provide public notice, then no earlier than 60 days from the expiration of the time limits established by [Government Code] [s]ections 65950 and 65952, an applicant may provide the required public notice using the distribution information provided pursuant to [s]ection 65941.5. If the applicant chooses to provide public notice, that notice shall include a description of the proposed development substantially similar to the descriptions which are commonly used in public notices by the permitting agency, the location of the proposed development, the permit application number, the name and address of the permitting agency, and a statement that the project shall be deemed approved if the permitting agency has not acted within 60 days."

Appellants did not provide public notice, so our focus is on the statutory language indicating deemed approval happens "only if the public notice required by law has occurred" (§ 65956(b)), and we must determine whether the Coastal Commission's public hearing notice satisfied that requirement.

As in any case involving statutory interpretation, we seek to determine the Legislature's intent. We begin with the statute's words and ascribe to them "'their plain, commonsense meaning.'" (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1261.)

14

"'[I]f the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary.'. . . '"[W]e presume the Legislature meant what it said . . . .'"' [Citation.] [In addition,] [s]tatutory language is not considered in isolation. Rather, we 'instead interpret the statute as a whole, so as to make sense of the entire statutory scheme.'" (*Ibid*.)

The Coastal Commission urges us to adopt the same interpretation as in *Mahon*, the only published California case interpreting the statutory language at issue. There, the Court of Appeal concluded the "'public notice required by law'" given by an agency must contain language stating that deemed approval will occur if the agency does not act within 60 days. (*Mahon, supra*, 139 Cal.App.4th at p. 822.) It reasoned: "We see no reason why the Legislature would require an applicant to send out anything *more* than 'public notice required by law' where the statute's only express prerequisite for deemed approval is 'public notice required by law.' Therefore, the statute's requirement that an applicant's notice include a warning of the potential for deemed approval must have been considered part of 'public notice required by law.' Similarly, although the statute does not expressly identify what the notice would have to include to constitute 'public notice required by law' if sent out by the agency, we see no reason why 'public notice required by law' would mean one thing if notice is provided by the agency and another if provided by the applicant." (*Ibid*.)

We do not agree. Although the *Mahon* court stated its conclusion was based on the "plain meaning" of the statutory language (*Mahon, supra*, 139 Cal.App.4th at p. 823), we believe it more aptly characterized as what the Legislature could have required, but did not. In following this path, *Mahon* reached the wrong conclusion.

As the Ninth Circuit explained in *American Tower Corporation v. City of San Diego* (9th Cir. 2014) 763 F.3d 1035, 1047-1048 (*American Tower*), the specific requirement that a notice contain "a statement that the project shall be deemed approved if the permitting agency has not acted within 60 days" is located in a sentence concerning

15

the required contents of a notice "[i]f the applicant chooses to provide public notice[.]" (§ 65956(b).) There is no language indicating that requirement applies to other scenarios. We must presume the Legislature meant what it said, and we may not add words to the statute under the guise of legislative interpretation. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562; *Brown v. County of Los Angeles* (2012) 203 Cal.App.4th 1529, 1547 [judicial interpretation that adds language to statute intrudes into legislative function].) Accordingly, as in *American Tower*, we decline to adopt the *Mahon* interpretation. (*American Tower,* at p. 1048.)

Returning to the plain language of the statute, section 65956(b) specifies the requisite public notice is that "required by law." Used in a general sense, the "law" has three components: statutory law, constitutional law and decisional law. (Cf. Evid. Code, §§ 160, 451.) Thus, for a permit to be "deemed approved" when an applicant has not provided public notice, an agency must have provided whatever public notice is required by statutory, constitutional and decisional law for the circumstance. We discuss the first two in turn, with decisional law interwoven as applicable.

Various statutes, and regulations promulgated based on the statutes, set forth public notice requirements for specified situations. For example, and relevant to this case, the Coastal Act requires the Coastal Commission provide advanced notice of a public hearing concerning a coastal development permit application. (Pub. Resources Code, § 30621, subd. (a).) The written notice must include, inter alia, a description of the proposed development and location, the date, time and location at which the hearing will be held, the general Coastal Commission hearing and application procedure, and information regarding public participation in the hearing. (*Ibid.*; 14 Cal. Code Regs. § 13063, subd. (a).) These notice requirements further government transparency and allow for public participation, among other things. (See *Pillsbury v. South Coast Regional Com.* (1977) 71 Cal.App.3d. 740, 745-746.)

16

It is undisputed the Coastal Commission provided the notice required by the applicable statutes and regulations for the public hearing concerning appellants' coastal development permit applications.

Beyond statutory law lies constitutional law. The due process clause of the constitution "require[s] reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest." (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612 (*Horn*).) Commonly referred to as procedural due process, these principles apply to governmental land use decisions which are adjudicative in nature, not those which are ministerial or legislative in nature (*ibid.*; *Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 622-623), and they serve to protect both adjacent landowners and applicants (*Cohan v. City of Thousand Oaks* (1994) 30 Cal.App.4th 547, 558). Adjudicatory matters are those "in which 'the government's action affecting an individual [(is)] determined by facts peculiar to the individual case.'" (*Horn*, at p. 613.) The Coastal Commission's consideration of a coastal development permit application is a prime example of an adjudicatory matter. (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 953.)

Due process noticing requirements are not formulaic; they vary depending on the competing interests involved in each situation. (*Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy* (1961) 367 U.S. 886, 895 ["The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation"]; *Horn, supra*, 24 Cal.3d at p. 617; *Drummey v. State Bd. of Funeral Directors & Embalmers* (1939) 13 Cal.2d 75, 80 ["Due process does not require any particular form of notice or method of procedure"].) For this reason, our Supreme Court has expressly "refrain[ed] from describing a specific formula which details the nature, content, and timing of the requisite notice." (*Horn,* at p. 618.)

Although there is no fixed "checklist" of requirements, case law provides solid guidance as to the scope of proper notice in the land use context. "[N]otice must, at

17

a minimum, be reasonably calculated to afford affected persons the realistic opportunity to protect their interests." (*Horn, supra*, 24 Cal.3d at p. 617.) "[D]epending on [(1)] the magnitude of the project, and [(2)] the degree to which a particular landowner's [property] interests may be affected, acceptable techniques might include notice by mail to the owners of record of property situate [*sic*] within a designated radius of the subject property, or by the posting of notice at or near the project site, or both. Notice must, of course, occur sufficiently prior to a final decision to permit a 'meaningful' predeprivation hearing to affected landowners." (*Id*. at p. 618.)

Here, the only dispute between the parties regarding notice is whether the Coastal Commission's notice had to state appellants' applications would be deemed approved if not acted on by a specified date for the Streamlining Act's deemed approval to occur. Assuming arguendo the coastal development permits were likely to effect a significant enough deprivation of neighboring property interests to trigger procedural due process, we need not address the full bounds of public notice content to conclude due process did not require such a statement under the circumstances.

The Coastal Commission's public hearing notice made the public, including adjacent landowners, aware of the projects' details, the date and time of the meeting at which the Coastal Commission would consider the matters, and the means by which interested persons could obtain more information and/or provide comments to the Commission, among other things. Such notice is "reasonably calculated to afford affected persons the realistic opportunity to protect their interests." (*Horn, supra*, 24 Cal.3d at p. 617.) Put another way, it "'apprise[s] interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections.'" (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1072 (*Ryan*).)

While providing information about potential scenarios that could occur depending on the Coastal Commission's chosen action or inaction at the public hearing,

18

including potential deemed approval under the Streamlining Act, might be informative, it is unnecessary to safeguard a person's property interests. (See *Pacific Gas & Electric Co. v. Public Utilities Com.* (2015) 237 Cal.App.4th 812, 860 ["All that is required is that the notice be reasonable"]; *Ryan, supra*, 94 Cal.App.4th at p. 1072 ["The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner"]; *Laupheimer v. State of California* (1988) 200 Cal.App.3d 440, 453 [notice need not contain asserted procedural details so long as "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'"].)

Notably, even though unnecessary, the Coastal Commission made the public aware of the approaching Streamlining Act deadline well before the public hearing. The Coastal Commission staff report concerning the applications, which is dated three weeks before the public hearing date and which the public notice indicated would be available no later than 10 days before the public hearing, states in bold lettering: "Due to Permit Streamlining Act requirements, the Commission must act upon these permit applications at the JULY 2016 Commission meeting unless they are withdrawn by the applicants." And, members of the public participated in the proceedings by providing comments to the Coastal Commission in advance of the hearing.

The Coastal Commission contends due process requires more under the circumstances. It claims that based on what occurred at the public hearing, no member of the public would have had reason to understand the permits were deemed approved as a matter of law, and, therefore, the public was denied its due process right to judicial review of the permit approvals. This argument fails from a factual and a legal standpoint.

First, as previously discussed, the trial court made a factual finding that the applications were not withdrawn at the public hearing and this finding is supported by

19

substantial evidence. The Coastal Commission's legal counsel and others made clear that the Streamlining Act deadline was approaching and that appellants possessed the sole authority to withdraw the applications. And, although appellants expressed interest in withdrawing subject to the Coastal Commission's grant of two conditions, the Coastal Commission only granted their request as to one condition and the meeting closed without any further statement from appellants or their representative.

Second, the Coastal Commission provides no authority for the proposition that the public has a separate due process right to judicial review following deemed approval of a coastal development permit where, as here, notice and an opportunity to be heard was provided prior to any deprivation of a property interest (i.e. prior to "deemed approval"). *Ciani v. San Diego Trust & Savings Bank* (1991) 233 Cal.App.3d 1604, the sole case cited by the Coastal Commission, is inapposite because (1) no due process issue was raised or decided therein (see *In re Chavez, supra*, 30 Cal.4th at p. 656 [case law is authority only for proposition considered and decided]), and (2) the local agency there did not give notice of, or hold, any public hearing concerning the coastal development permit at issue (*Ciani,* at pp. 1609-1610). Our Supreme Court has made clear that due process in the context before us requires only that notice and an opportunity to be heard (e.g. public hearing) "be afforded at some 'meaningful' point in the approval process." (*Horn, supra*, 24 Cal.3d at p. 619.) The Coastal Commission's public hearing notice provided the public with that opportunity to be heard.

Simply put, the necessary prerequisites to deemed approval under the Streamlining Act were satisfied in this case. The Coastal Commission provided the "public notice required by law" through its public hearing notice which satisfied applicable statutory law and procedural due process requirements. Accordingly, appellants were entitled to judgment in their favor on the petition for writ of mandate.

20

## DISPOSITION

The judgment is reversed.  On remand, the trial court is directed to vacate the judgment denying the petition for writ of mandate and enter a new judgment granting the petition.  Appellants are entitled to their costs on appeal.


THOMPSON, J.

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.

21